**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SKYBLUE OPERATIONS, LLC, and EAB TRANSPORT, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>PRIME PROPERTY AND CASUALTY INSURANCE COMPANY,<br><br>Defendant,<br><br>and<br><br>PRIME PROPERTY AND CASUALTY INSURANCE COMPANY,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>HOWARD BELTRAN and YILIEM MORALES,<br><br>Third-Party Defendants. | Case No. 2:23-cv-00513 (BRM) (MAH)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendant Prime Property and Casualty Insurance Company's ("Prime Property") Motion for Summary Judgment (the "Motion") (ECF No. 100) seeking: (1) summary judgment on all claims brought by Plaintiffs Sky Blue Operations, LLC ("Sky Blue") and EAB Transport, LLC ("EAB") (collectively, "Plaintiffs"); (2) summary judgment on its counterclaim against Sky Blue asking to be reimbursed for the expenses Prime Property incurred defending itself

against "non-covered claims" (ECF No. 100-1 at 17–18); and (3) judgement against EAB and Third-Party Plaintiff Howard Beltran's ("Beltran") claims, because neither is insured under the policy at issue (*id.* at 18). Plaintiffs timely filed an opposition (ECF No. 105), and Prime Property filed its reply (ECF No. 107). Beltran has not filed an independent opposition, and the deadline to file an opposition has expired. However, "the courts cannot grant motions for summary judgment merely because they are unopposed, even if no response is ever filed. Instead, the Court is required to conduct its own examination of whether granting summary judgment is appropriate" *Fekade v. Lincoln Univ.*, 167 F. Supp. 2d 731, 738 (E.D. Pa. 2001) (*citing* Fed.R.Civ.P. 56(e))

Having reviewed and considered the submissions filed in connection with the Motion, for the reasons set forth below and for good cause having been shown, Prime Property's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**. Prime Property's request for judgment EAB is **GRANTED**. All other requests within the Motion are **DENIED**, including the request for judgment against Sky Blue, the request to enforce Prime Property's indemnification agreement against Sky Blue, and the request for judgment against Beltran's counterclaims against Prime Property.

## I.    BACKGROUND

### A.    Factual Background

Because Prime Property is seeking summary judgment, it has included a Statement of Undisputed Material Facts with its motion. (ECF No. 100-2.) Likewise, in their opposition, Plaintiffs include a Counter-Statement of Facts, which disputes or clarifies some of the facts presented by the Statement. (ECF No. 106.) The Court relies on the facts submitted by both parties, in so doing the court "may not make credibility determinations or engage in any weighing of the

evidence; instead, the non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004)

Sky Blue and EAB are part of a family of related trucking businesses, which included L&Y Enterprises, LLC ("L&Y") and Doing-it-Right Technologies, LLC. (*Compare* ECF No. 102-2 ¶¶ 21–22; *with* ECF No. 106 ¶¶ 21–22.) The companies in question are family businesses owned and operated by the Morales family. (*Compare* ECF No. 102-2 ¶¶ 21–22; *with* ECF No. 106 ¶¶ 21–22.)

Relevant to this Motion, the parties contest which of these companies employed Beltran at the time of the accident. (*Compare* ECF No. 102-2 ¶ 33; *with* ECF No. 106 ¶ 33.) Prime Property argues Beltran was an employee of Sky Blue because Sky Blue was the company he applied to, Sky Blue was the company responsible for performing Beltran's drug tests, and Beltran drove trucks on behalf of Sky Blue on multiple occasions. (*Compare* ECF No. 102-2 ¶ 30; *accord* Motion Ex. V (ECF No. 100-28).) In contrast, Sky Blue contends Beltran was an employee of L&Y, because L&Y paid his wages and workers' compensation. (*See* ECF No. 106 ¶ 30 (*citing* Motion Ex. W Beltran W-2 (ECF No. 100-29)).) For his part, Beltran maintains he was an employee of L&Y who also drove trucks on behalf of Sky Blue when requested to do so. (Beltran's Answer to Third-Party Compl. and Crossclaim (ECF No. 27) at 9.) Further, Sky Blue explains the forms on which Prime Property relies are misleading. (ECF No. 106 ¶ 30 (*citing* Motion Ex. J, Transcript of the Depo. of Yiliem Morales (ECF No. 100-15) at Tr. 31:4–10).) L&Y used Sky Blue's forms because federal regulations require driver documents to match the company operating the vehicle—but all the documents and hiring process for Beltran were handled by L&Y. (*Id.*)

On June 12, 2019, Beltran was driving a truck owned by EAB and operated by Sky Blue. (*Compare* ECF No. 102-2 ¶ 2; *with* ECF No. 106 ¶ 2.) While driving the truck, Beltran was

3

involved in a motor vehicle accident, in which he suffered severe injuries requiring the amputation of one of his legs below the knee. (*Compare* ECF No. 102-2 ¶¶ 2, 3; *with* ECF No. 106 ¶¶ 2, 3; *see also* ECF No. 27 at 9.) Beltran brought a workers' compensation claim against L&Y, which he maintains was his employer. (ECF No. 27 at 9.) However, he also brought a tort claim against both EAB and Sky Blue, the owner and operator of his truck, in the Superior Court of New Jersey, Law Division, Docket No. HUD-L-3248-20 (the "Underlying Action") (*Id.* at 10), which was voluntarily dismissed pending the outcome of this litigation (Opp. Ex. 9 (ECF No. 105-9)).

Upon being notified of the claim against it, Sky Blue approached its insurer Prime Property and requested it to fulfill its duty to defend, and potentially indemnify, Sky Blue in the Underlying Action. (*Compare* ECF No. 102-2 ¶ 2, 3; *with* ECF No. 106 ¶¶ 2, 3.) However, Prime Property requested information on Beltran and his employment status because the subject insurance policy (ECF No. 100-11 (the "Policy")) excluded coverage for claims of injuries to "employees."[1] (*Compare* ECF No. 102-2 ¶ 12–16; *with* ECF No. 106 ¶¶ 12–16.) Upon completion of its investigation, Prime Property determined Beltran was an employee of Sky Blue, and therefore Sky Blue was not entitled to a defense under the Policy. (Opp. Ex. 8 (ECF No. 105-8) at 4–5.)

Sky Blue disagreed and brought suit against Prime Property, requesting the Court to enter an order requiring Prime Property to provide it a defense in the Underlying Action. (ECF No. 2-1.)

**B.      Procedural Background**

Sky Blue and EAB originally filed their Complaint in the Superior Court of New Jersey, Hudson County asserting that Prime Property was required to provide it with a defense to the

---

[1] The parties dispute how the Policy defines "employee," which the Court will address *infra* as part of its analysis. (Compare ECF No. 100-1.)

claims against it by Beltran. (*See* Notice of Removal, Docket No. HUD-L-4228-22 (ECF No. 1-1).) Prime Property removed the matter to this Court on January 27, 2023, on the basis of federal diversity jurisdiction. (ECF No. 1 ¶¶ 4–9.) On February 6, 2023, Prime Property answered the Complaint and set forth its Counterclaim against Sky Blue, Prime Property assets it owes no coverage to Sky Blue or EAB. (ECF No. 5.) Simultaneously, Prime Property filed Third-Party Complaints against Yiliem Morales and Beltran, attempting to enforce the indemnification clause signed by Yiliem Morales and seeking declaratory judgment it owed no duty to pay a judgment in Beltran's favor under the MCS-90 endorsement. (*Id.*) Yiliem Morales filed an answer on March 16, 2023, denying a duty to indemnify Prime Property. (ECF No. 21.) Beltran filed his Third-Party Answer a few days later, on March 29, 2023, which included a cross-claim against Prime Property. (ECF No. 27.) Specifically, Beltran requests Prime Property be required to defend and indemnify Sky Blue so that his own tort claim against Sky Blue can proceed and be paid. (ECF No. 27.) Prime Property filed an Amended Answer and Third-Party Complaint on October 3, 2023, denying any duty to cover damages from Beltran's claims. (ECF No. 50.)

On July 9, 2025, fact discovery concluded. (Fifth Amended Scheduling Order (ECF No. 96).) Prime Property moved for summary judgment on all claims on September 11, 2025. (ECF No. 100.) Sky Blue timely filed an opposition on behalf of Plaintiffs on November 3, 2025 (ECF No. 105), and Prime Property replied on November 17, 2025 (ECF No. 107). Beltran has not contested Prime Property's motion for summary judgement, and the Court will independently determine whether Beltran's claims warrant summary judgment. *Fekade*, 167 F. Supp. 2d at 738.

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). "On motions for summary judgment, the movant shall furnish a statement which sets forth material facts as to which there does not exist a genuine issue, in separately numbered paragraphs citing to the affidavits and other documents submitted in support of the motion." L. Civ. R. 56.1(a). A party asserting a genuine dispute of material fact must support the assertion by either "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). A factual dispute "is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and "is material only if it might affect the outcome of the suit under governing law." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Unsupported allegations, subjective beliefs, or argument alone, however, cannot forestall summary judgment." *Read v. Profeta*, 397 F. Supp. 3d 597, 625 (D.N.J. 2019) (citations omitted). Irrelevant or unnecessary factual disputes will also not preclude a grant of summary judgment. *See Anderson*, 477 U.S. at 248. Additionally, "mere speculation does not create genuine issues of material fact." *Dellapenna v. Tredyffrin/Easttown Sch. Dist.*, 449 F. App'x 209, 215–16 (3d Cir. 2011) (citing *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990)).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a movant adequately supports its summary judgment motion, the burden shifts to the nonmovant to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on

file,' designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000) (quoting *Anderson*, 477 U.S. at 255). In other words, in deciding a party's summary judgment motion, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 255. "Summary judgment is appropriate only when there are no genuine issues of material fact, drawing all justifiable inferences in favor of the nonmovant." *Adams v. Fayette Home Care & Hospice*, 452 F. App'x 137, 139 (3d Cir. 2011) (citing *Anderson*, 477 U.S. at 248, 255).

If the moving party bears the burden of proof at trial, summary judgment is not appropriate if the evidence is susceptible to different interpretations or inferences by the trier of fact. *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999). On the other hand, if the non-moving party bears the burden of proof at trial, "summary judgment is warranted if the nonmovant fails to 'make a showing sufficient to establish the existence of an element essential to [its] case.'" *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (alteration in original) (quoting *Celotex Corp.*, 477 U.S. at 322). A "genuine issue as to any material fact" cannot exist if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322–23. "[A] complete failure of

proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323. A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 248).

## III.    DECISION

The issue in dispute is whether or not Beltran was an employee of Sky Blue at the time of the accident within the meaning of the Policy. According to Prime Property, Beltran was an employee of Sky Blue because there is no dispute Beltran was driving the truck at the time of the accident, and the Federal Motor Carrier Safety Regulations, 49 C.F.R. § 300 *et seq.*, define all drivers, including "independent contractors," as employees. (ECF No. 100-1 at 4 (*citing* 49 C.F.R. § 390.5).) Based on the language of the Policy, which does not expressly adopt the regulatory definition of "employee," the Court disagrees. (Policy at 18.)

### A.    Whether Beltran was an employee of Sky Blue is a contested question of fact

Prime Property argues that the Policy expressly defines the term "employee" either by the terms of the contract itself or through incorporation of federally-required provisions such as the MCS-90 endorsement. (ECF No. 100-1 at 6–7.) As Sky Blue points out, however, though the Policy includes an entry for the term "employee" within its definitions, it merely makes clear the term includes a "leased worker" but does not include a "temporary worker." (ECF No. 100-5 at 4–5 (*citing* Policy at 18).)

Prime Property's argument that the Policy implicitly incorporates a regulatory definition of employee is not persuasive. According to Prime Property because it would be required to "cover[] Sky Blue for its liability to a third-party" hypothetically injured by Beltran under 49 C.F.R. § 387.7(d)(1), it must therefore not be required to cover Sky Blue in a claim from Beltran.

(ECF No. 100-1 at 6.) However, Prime Property does not offer any authority to support this interpretation. (*See generally id.*) Indeed, its position runs counter to binding Third Circuit precedent which holds these regulations are a "suretyship by the insurance carrier to protect the public"; in other words, it is a safety net triggered only "when the policy it is attached to does not provide coverage." *Canal Ins. Co. v. Underwriters at Lloyd's London*, 435 F.3d 431, 443 n.4 (3d Cir. 2006) (holding the contract's "exclusion" provisions did not conflict with federal regulations even where there was a "broad gap of coverage"). Because Prime Property has neither identified any "uncompensated victims" in this case nor "state or federal statute that is offended by the potential gap in coverage," the contract remains subject to the ordinary principles of contract interpretation. *Id.* at 443; *see also T.H.E. Ins. Co. v. Larsen Intermodal Servs., Inc.*, 242 F.3d 667 (5th Cir. 2001) (holding the federal regulation "accomplishes its purpose by reading out only those clauses in the policy that would limit the ability of a third party victim to recover for his loss," and did not supplant agreements between the parties). The definition of employee within the Policy confirms that the regulatory definition of employee was not meant to apply—because it expressly excludes "temporary workers" whereas Federal Motor Vehicle Carrier Regulations are clear that they apply to any driver of a commercial motor vehicle even if they are temporary. 49 C.F.R. 390.5 (defining "employee").

The Court turns to the two definitions of employee offered by Sky Blue. First, the Court will address Sky Blue's preferred definition, importing "the Workers' Compensation Act's definition of employee." (ECF No. 105 at 12 (citing N.J.S.A. § 34:15-36).) This approach is unworkable. Though the Policy excludes claims where the injured employee is covered by workers' compensation, there is no indication that the Policy adopts the Workers' Compensation Act's definition of employee. (*See* Policy at 39, 49.) Furthermore, the Worker's Compensation

9

Act's definition of employee does not provide analytical clarity here, because the definition does not include a method to identify the employer. The Workers' Compensation Act defines employee only as "natural persons," *i.e.*, those "who perform service for an employer for financial consideration." N.J.S.A. § 34:15-36 There is no question Beltran is an employee; the operative question is whether he is an employee of Sky Blue. (ECF No. 100-1 at 3; ECF No. 105 at 11.) Therefore, even if the policy did incorporate the Workers' Compensation Act definition, the Court would still need to rely on some other source of law to answer the question posed here.

Second, Sky Blue argues the Policy incorporates New Jersey law's definition of employee. (*Id.* at 10–11.) Though the Policy does not contain a choice of law provision, it references "New Jersey law," imports definitions from New Jersey contract law fifteen times, and references no other applicable law. (*See* Policy at 31, 32, 39, 42, 49, 52, 54.) "[U]nless the contract has a choice-of-law provision," the Court will "apply the forum's contract interpretation law." *Williams v. Medley Opportunity Fund II, LP*, 965 F.3d 229, 238 (3d Cir. 2020) (*citing DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 53 (2015)). Therefore, the Court will apply New Jersey law to determine which company, or companies, employed Beltran at the time of the accident.

Under New Jersey law, whether an individual is the employee of a given company is determined by the "'control test' and the 'relative nature of work test.'" *Gil v. Clara Maass Med. Ctr.*, 162 A.3d 1093, 1100 (N.J. Super. Ct. App. Div. 2017) (*quoting Lowe v. Zarghami*, 731 A.2d 14, 19 (N.J. 1999)). The control test is the primary method of determining employer identity; the Court only employs the relative nature of work test if "the control test is inconclusive." *Lowe*, 731 A.2d at 21. "[W]hether [an entity] possessed sufficient indicia of control to be an 'employer' is essentially a factual issue." *See Boire v. Greyhound Corp.*, 376 U.S. 473, 481 (1964) (considering whether a company was plaintiff's employer under the National Labor Relations Act.).

10

"The control test requires consideration of four factors: '(1) the degree of control exercised by the employer over the means of completing the work; (2) the source of the workers' compensation; (3) the source of the worker's equipment and resources; and (4) the employer's termination rights.'" *Gil*, 162 A.3d at 1100 (quoting *Lowe*, 731 A.2d at 20.) "The greater the degree of control exercised by the employer, the more likely a worker will be considered an employee. The control test is satisfied whenever the employer retains the right of control, even if the employer may not exercise actual control over the worker." *Lowe*, 731 A.2d at 20.

The parties agree that Beltran may have been a joint employee between multiple companies within the Morales family's control. (ECF No. 105 at 21; ECF No. 107 at 11.) "[W]hen two or more employers exert significant control over the same employees . . . they are considered joint employers . . . . Whether that kind of joint control is actually being exercised is usually a factual question." *Commc'ns Workers of Am., AFL-CIO v. Atl. Cnty. Ass'n for Retarded Citizens*, 594 A.2d 1348, 1355 (N.J. Super. Ct. Ch. Div. 1991); *see also Pantano v. New York Shipping Ass'n*, 294 A.3d 1148, 1154 (N.J. 2023) (holding under New Jersey law "[c]ontrol is the threshold inquiry" in determining the identity of an employer and "in some instances, a worker may be serving as a dual employee" of multiple employers exerting control).

Prime Property argues even if the New Jersey definition of employee applies, Beltran would qualify as a "leased worker" under the Policy. (*See* ECF No. 107 at 1; *see also* Policy at 18.) Indeed, at least one witness testified Beltran was leased to Sky Blue. (ECF No. 100-15, Tr. 11:8–10, 13:1–6.) However, the Policy clearly defines "[l]eased workers" as "a person leased . . . by a labor leasing firm" and not as any person that may work for Sky Blue under a lease. (Policy at 18.) As Sky Blue points out, whether an employee is a leased worker "does not turn on how the agreement between the alleged lessor and lessee is labeled." *Gil*, 162 A.3d at 1100 (definition of

11

employee which included leased workers did not apply to a doctor leased between two entities which practiced medicine). Instead, it turns on the nature of the businesses involved. "[A] labor leasing firm is a company *in the business of placing its employees* at client companies for varying lengths of time in exchange for a fee." *Id.* (emphasis added) (*quoting Telamon Corp. v. Charter Oak Fire Ins. Co.*, 850 F.3d 866 (7th Cir. 2017)). There is no evidence L&Y is in the business of leasing its employees, and therefore Beltran was not a leased employee.

There is, however, substantial and conflicting evidence as to which entity exerted primary control over Beltran at the time of the accident. In Prime Property's favor, the hiring and administrative documents associated with Beltran bear the name and logos of Sky Blue, and Yuneitzy Morales, a former employee of Sky Blue, testified Beltran was hired by Sky Blue in 2019. (ECF No. 100-1 at 6.) Sky Blue responds this was for regulatory reasons, and the documents were handled and signed by L&Y's human resources department. (ECF No. 106 ¶ 30.) Furthermore, Sky Blue has independent evidence in its favor—Yiliem and Lester Morales, who are associated with L&Y, testified Beltran was their employee and leased to Sky Blue. (ECF No. 100-15 at Tr. 31:4–10.) Therefore, there remains a dispute of material facts, and summary judgment is inappropriate on the issue of whether Beltran was an employee of Sky Blue.

**B.      Summary Judgment on Prime Property's Counterclaim is inappropriate**

Prime Property also asks the Court to find it is entitled to be indemnified for the costs it has incurred due to Beltran's claims against Sky Blue as a "Non-Covered Claim" under its "Loss Adjustment Agreement." (ECF No. 100-1 at 17.) Sky Blue responds this policy cannot be enforced because it "lacks consideration" and is therefore "illusory." (ECF No. 105 at 17.) However, this argument is meritless. It is well established any consideration "more than a mere peppercorn" is sufficient to sustain a contract. *Antkowiak v. TaxMasters*, 455 F. App'x 156, 161 n. 9 (3d Cir.

2011). Here, the consideration is the insurance policy itself, which would not have been offered without the accompanying indemnification. (*See* Motion Ex. Y, the Loss Adjustment and Collateral Agreement (ECF No. 100-31) at 1.)

Nevertheless, because the Court denies Prime Property's Motion on Plaintiff's claims, *see supra* Section III.A, it cannot determine whether this is a "Non-Covered Claim" within the meaning of the agreement. Therefore, Prime Property's Motion for Summary Judgment on its Counterclaim is denied.

### C.    EAB is not an insured under Prime Property's contract and summary judgment is proper

Prime Property also requests that summary judgment be granted against EAB, as there is no dispute that EAB is not a signatory nor beneficiary under the Policy. (ECF No. 100-1 at 14.) Indeed, the Policy lists Sky Blue, and not EAB, as the only party insured under its terms. (Policy at 1–2.) For its part, Sky Blue's opposition makes no mention of EAB beyond noting Sky Blue "is affiliated with Plaintiff EAB, which owns certain trucks" including the truck Beltran drove the day of the accident, and noting EAB did not employ Beltran. (ECF No. 105 at 2, 12.) Sky Blue does not contest it is the only party insured by Prime Property. (*Compare* ECF No. 102-2 ¶ 13; *with* ECF No. 106 ¶ 13.) Because EAB is not insured under the Policy, there can be no duty to defend or indemnify. *See Zenith Ins. Co. v. Newell*, 527 F. Supp. 3d 778, 790 (E.D. Pa. 2021) (finding that there was no duty to defend a party who was not insured under the contract), *aff'd*, No. 24-1035, 2024 WL 4986938 (3d Cir. Dec. 5, 2024).

Therefore, the Court summary judgment is granted as to EAB's claims.[2]

---

[2] Granting summary judgment as to EAB has no impact on whether this is a Non-Covered Claim for the purposes of the Loss Adjustment Agreement.

**D.    There is no cause to grant judgment as to Beltran's third-party counterclaims against Prime Property**

Finally, Prime Property argues since Beltran is not an insured under the Policy his counterclaim seeking judgment against Prime Property "must be dismissed."[3] (ECF No. 107 at 16.) However, the Court does not read Beltran's Complaint in the Underlying Action as alleging he is directly entitled to coverage under the Policy. (ECF No. 27.) Beltran instead alleges he was injured due to the "negligence of EAB and Sky Blue," and that these companies were insured by Prime Property. (*Id.* at 9.) His claim against Prime Property is simply that it should fulfill its obligations to Sky Blue, and is therefore entirely derivative of Sky Blue's own claims. (*Id.*)

Beltran was initially added to this controversy by Prime Property itself as a necessary third-party defendant because Beltran's Complaint against Sky Blue and EAB in the Underlying Action gave rise to Sky Blue's own Complaint. (Prime Property Am. Answer and Counterclaim (ECF No. 50) at 6.) Though the Underlying Action has been voluntarily dismissed pending this Court's decision, Beltran's claims depend on the outcome of the decision in this case—including whether he is an employee of Sky Blue. *See Beltran v. Sky Blue Operations LLC et al*, HUD-L-3248-20, Order, Trans ID: LCV202578093 (January 10, 2025) (ordering the case dismissed). Therefore, because his claims do not depend on a personal surety relationship with Prime Property, and he is a necessary party with an interest in the outcome of this case, Prime Property's motion for summary judgment on Beltran's claims is denied.

**IV.    CONCLUSION**

---

[3] Although the Prime Property requests Beltran and EAB's claims be dismissed, the Court interprets this as a request for summary judgement on all claims from both parties at this stage.

Prime Property's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**. Summary judgment is granted as to EAB's claims. Summary judgment is **DENIED** as to Prime Property's counterclaim and as to Sky Blue's and Beltran's claims.

**Date:** May 21, 2026

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**