**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

SKYBLUE OPERATIONS, LLC, and EAB TRANSPORT, LLC,

Plaintiffs,

v.

PRIME PROPERTY AND CASUALTY INSURANCE COMPANY,

Defendant,

and

PRIME PROPERTY AND CASUALTY INSURANCE COMPANY,

Third-Party Plaintiff,

v.

HOWARD BELTRAN and YILIEM MORALES,

Third-Party Defendants.

Case No. 2:23-cv-00513 (BRM) (MAH)

**OPINION**

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendant Prime Property and Casualty Insurance Company's ("Prime Property") Motion to Modify a Court Order (the "Motion") (ECF No. 111) requesting the court modify its May 21, 2026 Order (ECF No. 109) to include a certification for interlocutory appeal. Plaintiff Skyblue Operations, LLC ("Skyblue") timely filed an opposition (ECF No. 113), and Prime Property filed its reply (ECF No. 114).

Having reviewed and considered the submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure ("Rule") 78(b), for the reasons set forth below and for good cause having been shown, Prime Property's Motion to Modify a Court Order is **DENIED**.

## I. BACKGROUND

The underlying factual and procedural history of this matter are set forth in this Court's May 21, 2026 Opinion granting in part Prime Property's Motion for Summary Judgment pursuant to Rule 12(c). (*See* ECF No. 108.) Accordingly, the Court incorporates the factual and procedural history sections set forth in same and succinctly recounts only the relevant portions herein.

### A. Procedural Background

Plaintiffs Skyblue and EAB Transport, LLC ("EAB") filed their Complaint in the Superior Court of New Jersey, Hudson County asserting Prime Property was required to provide it with a defense to the claims against it by Third-Party Defendant Howard Beltran ("Beltran"). (*See* Notice of Removal, HUD-L-4228-22, LCV20224453825; *accord* ECF No. 1-1.) Prime Property removed the matter to this Court on January 27, 2023, on the basis of federal diversity jurisdiction. (ECF No. 1 ¶¶ 4–9.) On February 6, 2023, Prime Property answered the Complaint and set forth its counterclaim against Skyblue asserting it owes no coverage to Skyblue or EAB. (ECF No. 5.) Simultaneously, Prime Property filed Third-Party Complaints against Beltran and Third-Party Defendant Yiliem Morales ("Morales"), attempting to enforce the indemnification clause signed by Morales and seeking declaratory judgment it owed no duty to pay a judgment in Beltran's favor under the MCS-90 endorsement. (*Id.*) Morales filed an answer on March 16, 2023, denying a duty to indemnify Prime Property. (ECF No. 21.) Beltran filed his answer a few days later, on March 29, 2023, which included a cross-claim against Prime Property. (ECF No. 27.) Specifically, Beltran

requested Prime Property be required to defend and indemnify Skyblue so his own tort claim against Skyblue can proceed and be paid. (ECF No. 27.) Prime Property amended its third-party pleadings on October 3, 2023, denying any duty to cover damages from Beltran's claims. (ECF No. 50.)

On July 9, 2025, fact discovery concluded. (Fifth Amended Scheduling Order (ECF No. 96).) Prime Property moved for summary judgment on all claims on September 11, 2025. (ECF No. 100.) Skyblue filed an opposition on behalf of Plaintiffs on November 3, 2025 (ECF No. 105), and Prime Property replied on November 17, 2025 (ECF No. 107).

On May 21, 2025, the Court issued an Opinion and Order granting in part Prime Properties' Motion for Summary Judgment. (ECF Nos. 108, 109.) The Court denied summary judgment on the question of whether Beltran was an employee of Skyblue within the meaning of the parties' contract, holding it was a contested question of fact turning on which entity controlled Beltran's activities. (ECF No. 108 at 11.)

## II. LEGAL STANDARD

Federal Rule of Appellate Procedure ("Appellate Rule") 5(a)(3) governs a motion to amend a non-final order to certify a question for interlocutory appeal. *See* Fed. R. App. P. 5(a)(3) (granting the courts the authority to "amend its order, either on its own or in response to a party's motion, to include the required permission or statement"). The time to petition for interlocutory appeal runs from entry of any amended orders. Fed. R. App. P. 5(a)(3).

The statute governing interlocutory appeals, 28 U.S.C. § 1292(b), provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate

> termination of the litigation, he shall so state in writing such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such an order . . . .

28 U.S.C. § 1292(b).

Therefore, a district court may certify an order for interlocutory appeal if (1) the order involves a controlling question of law, (2) there is a "substantial ground for difference of opinion" about that question of law, and (3) immediate appeal may materially advance the ultimate termination of the litigation. *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974). "The burden is on the movant to demonstrate that all three requirements are met." *F.T.C. v. Wyndham Worldwide Corp.*, 10 F. Supp. 3d 602, 633 (D.N.J. 2014).

A district court should certify an interlocutory appeal "sparingly" and "only in exceptional circumstances that justify a departure from the basic policy of postponing review until the entry of the final order." *Fiscus v. Combus Finance AG*, Civ. A. No. 03-1329, 2006 WL 2845736, at *1 (D.N.J. Sept. 28, 2006) (citing *Hulmes v. Honda Motor Co.*, 936 F. Supp. 195, 208 (D.N.J. 1996)); *see also Kapossy v. McGraw-Hill, Inc.*, 942 F. Supp. 996, 1001 (D.N.J. 1996) ("A motion should not be granted merely because a party disagrees with the ruling of the district judge." (internal quotation marks omitted)). Even if the moving party meets all criteria under Section 1292(b), the district court may still deny certification as "permission to appeal is wholly within the discretion of the courts." *Bachowski v. Usery*, 545 F.2d 363, 368 (3d Cir. 1976); *see also United States v. Riddick*, 669 F. App'x 613, 613 n.2 (3d Cir. 2016) (finding an order denying a request to certify questions for appeal was unreviewable (citing *Forsyth v. Kleindienst*, 599 F.2d 1203, 1208 (3d Cir. 1979))).

## III. Decision

Prime Property argues interlocutory appeal of the May 21, 2026 Order denying the motion for judgment on the pleadings is appropriate because: (1) the order involves a controlling question of law—*i.e.*, whether Beltran qualifies as an employee within a Federal Motor Carrier Safety Regulations 49 C.F.R. § 390.5 (*see* ECF 111 at 5); (2) the order involves a substantial ground for difference of opinion—*i.e.*, whether the insurance policy between Skyblue and Prime Property inherently incorporates the (*see id. at* 7); and (3) an immediate appeal may materially advance the ultimate termination of the litigation—*i.e.*, resolving this question of law would dispose of most major questions in this case (*see id.* at 10). The Court reviews each argument in turn.

### A. Controlling Question of Law

An interlocutory appeal is typically reserved for "pure" and "controlling" questions of law. *See* 28 U.S.C. § 1292(b). A "pure" question of law is one pertaining to "the meaning of a statutory or constitutional provision, regulation, or common law doctrine." *ADP, LLC v. Ultimate Software Grp., Inc.*, Civ. A. No. 16-8664, 2018 WL 1838003, at *4 (D.N.J. Apr. 17, 2018) (quoting *Ahrenholz v. Bd. of Trs. of Univ. of Illinois*, 219 F.3d 674, 676 (7th Cir. 2000)). "[Q]uestions about a district court's application of facts of the case to established legal standards are not controlling questions of law for purposes of section 1292(b)." *Juice Ent., LLC v. Live Nation Ent., Inc.*, 353 F. Supp. 3d 309, 312–13 (D.N.J. 2018) (quoting *Morgan v. Ford Motor Co.*, Civ. A. No. 06-1080, 2007 WL 269806, at *2 (D.N.J. Jan. 25, 2007)); *see also In re Barsan Contractors*, Civ. A. No. 04-12362, 2010 WL 3907116, at *5 (D.N.J. Sept. 30, 2010) ("Misapplication of the law to the facts is not a question of law"). In other words, interlocutory appeal is generally "not suitable for reviewing mixed questions of law and fact." *Johnson v. Nat'l Collegiate Athletic Ass'n*, 108 F.4th 163, 183 (3d Cir. 2024) (Porter, J., concurring) (citing *Resol. Tr. Corp. v. Cityfed Fin. Corp.*, 57

F.3d 1231, 1236 n.6 (3d Cir. 1995)). "A question is 'controlling' if its incorrect disposition would require reversal of the final judgment." *Kapossy*, 942 F. Supp. at 1001 (internal quotation marks omitted).

The interpretation of express or implied contractual terms, as well as the interpretation of statutes and regulations, are questions of pure law. *Hess Corp. v. ENI Petroleum US, LLC*, 86 A.3d 723, 727 (App. Div. 2014) ("Contract interpretation is a question of law."). Further, the Court agrees if Beltran were a non-temporary employee of Skyblue the insurance contract between it and Prime Property would unambiguously exempt Prime Property from coverage. (ECF No. 105-8 at 30. 49.) The Court agrees this is a controlling question of law.

**B. Substantial Ground for Difference of Opinion**

Substantial ground for a difference of opinion "must arise out of genuine doubt as to the correct legal standard." *Hulmes*, 936 F. Supp. at 207. "A party's disagreement with the district court's ruling does not constitute 'a substantial ground for a difference of opinion' within the meaning of 1292(b)." *Id.* "The clearest evidence of 'substantial grounds for difference of opinion' is where 'there are conflicting interpretations from numerous courts.'" *Knopick v. Downey*, 963 F. Supp. 2d 378, 398 (M.D. Pa. 2013) (citing *Beazer E., Inc. v. The Mead Corp.*, Civ. A. No. 91-408, 2006 WL 2927627, *2 (W.D. Pa. Oct. 12, 2006)). However, a court may find a lack of substantial grounds for a difference of opinion even if district and circuit courts have arrived at contrary holdings, provided those holdings are not controlling. *See Smith v. Conseco Life Ins. Co.*, Civ. A. No. 13-5253, 2014 WL 5361746 (D.N.J. Oct. 21, 2014) (citing *Interfaith Cmty. Org., Inc. v. PPG Indus. Inc.*, 702 F. Supp. 2d 295, 319 (D.N.J. Mar. 26, 2010)).

Here, Prime Property provides no contradictory authority from within this Circuit. (*See generally* ECF No. 111-1.) Rather, Prime Property relies on opinions entered in the Fifth and Ninth

Circuits as well as the Northern District of Alabama. (ECF No. 111-1 at 10 (citing *Lancer Ins. Co. v. Newman Specialized Carriers, Inc.*, 903 F. Supp. 2d 1272 (N.D. Ala. 2012)); *Perry v. Harco Nat. Ins. Co.*, 129 F.3d 1072 (9th Cir. 1997); and *Consumers Cnty. Mut. Ins. Co. v. P.W. & Sons Trucking, Inc.*, 307 F.3d 362 (5th Cir. 2002).) However, these cases do not support Prime Property's position. *Perry v. Harco National Insurance Co.*, stands for the proposition the "Motor Carrier Act" did not "create[] a cause of action against motor carriers" for injuries sustained by "leased workers," and did not hold the definition of employee found within 49 C.F.R. § 390.5 is read into all related insurance contracts as a matter of course. 129 F.3d at 1075. *Consumers County Mutual Insurance Co. v. P.W. & Sons Trucking, Inc.*, is Prime Property's most persuasive authority but does not sufficiently address the issue here either to create a substantial difference in opinion. 307 F.3d at 367. Similar to the present case, *Consumers County* involved a dispute over whether a worker was an employee within the meaning of an insurance policy. *Id.* However, *Consumers County* was applying Texas contract law, and more importantly the contract at issue had "[no] indication in the policy" that the parties intended any definition of employee other than the one provided in § 390.5. *Id.* That is not the case here because the definition of employee provided by § 390.5 is: "any individual, other than an employer, who is employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety." This is incompatible with the definition of employee in policy itself, which expressly excludes any "temporary workers" from the definition even though they are unquestionably employed individuals who affect commercial motor vehicle safety. (ECF No. 100-11 at 18.) The definitions provided by the contract are mutually exclusive with the regulatory definition—therefore the question becomes whether the definition in the contract, interpreted within the meaning of common law, offends the public policy of Federal Motor Carrier Safety Regulations.

Prime Property also appears to misapprehend the Court's reasoning regarding *Canal Insurance Co. v. Underwriter's at Lloyd's London*. 435 F.3d 431 (3rd Cir. 2006). (*See* ECF No. 111-1 at 8.) In *Canal Insurance Co.* the Third Circuit, applying Pennsylvania's Motor Vehicle Financial Responsibility Law, had to determine whether the broad gap offended public policy where two insurance contracts had a "broad gap in coverage." *Id.* at 442. The Third Circuit held "the purpose of [Pennsylvania's law] is to control the cost of consumer auto insurance" not improve recovery to the victims of accidents therefore the public policy did not serve to overwrite the ordinary principles of contract interpretation. *Id.* at 443. The Third Circuit similarly noted the purpose of the MSC-90 endorsement is to be a "safety net" to "protect the public," it is not attempting to govern the scope of insurance coverage between insurance companies and clients. *Id.* 443 n. 4. It does not matter for the goals of the MSC-90 endorsement or 49 C.F.R. § 390.5 whether Beltran is an employee or a contractor leased from another firm—the public is protected either way—therefore there is no cause to have statutory elements, not present within the text of the contract, supersede the plain language of the contract.

Accordingly, Prime Property has failed to present a sufficient controversy to suggest there exists a substantial group for a difference of opinion.

**C. Materially Advance the Ultimate Termination of the Litigation**

An interlocutory appeal materially advances the litigation's ultimate termination if it will (1) eliminate the need for trial; (2) eliminate complex issues from the action; or (3) eliminate issues that make discovery more difficult and more expensive. *In re Dwek*, Civ. A. No. 10-4259, 2011 WL 487582, *4 (D.N.J. Feb. 4, 2011) (citing *L.R. v. Manheim Twp. Sch. Dist.*, 540 F. Supp. 2d. 603, 613 (E.D. Pa. Mar. 26, 2008)). A critical factor is whether the interlocutory appeal will cause excessive delay. *See Hulmes*, 936 F. Supp. at 212 (noting "[d]elay is a particularly strong ground

for denying appeal if certification is sought from a ruling made shortly before trial" (quotation and citation omitted)). Furthermore, "[w]here discovery has been ongoing and the case is nearly ready for trial, 'an interlocutory appeal can hardly advance the ultimate termination of the litigation.'" *Knopick*, 963 F. Supp. 2d at 398.

Here, discovery has concluded and pretrial conferences are scheduled. There is minimal, if any, efficiency to be gained by permitting an interlocutory appeal at this time.

## IV. CONCLUSION

For the reasons set forth above, Prime Property's Motion to Modify Court Orders (ECF No. 111) pursuant to Appellate Rule 5(a)(3), is **DENIED**. An appropriate order follows.

**Date: September 3, 2026**

***/s/ Brian R. Martinotti***
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**